IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEROY SMITH, #107551, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:03cv974-MEF |
| | ) | (WO) |
| GWENDOLYN MOSLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, LeRoy Smith ("Smith") contends that his constitutional rights were violated during his incarceration in Easterling Correctional Facility ("Easterling"). Specifically, he asserts that the defendants violated his right to access the mail by withholding his subscription to *Popular Science* magazine, engaged in unreasonable censorship by implementing a policy requiring that magazine address labels specify a prisoner's dormitory and bed number, and violated his right to due process by failing to provide him an opportunity to object to the return of his September issue of the magazine to the publisher. He names Gwendolyn Mosley ("Mosley"), Warden III at Easterling, and Sharon Blakely ("Blakely"), Administrative Assistant I, as defendants. Smith seeks declaratory and injunctive relief.

The defendants filed a written report and supporting evidentiary materials addressing Smith's claims. The court deems it appropriate to treat these responsive pleadings as a

motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and the response in opposition filed by Smith, the court concludes that the defendants' motion for summary judgment should be granted.

## I.  FACTS

On or around August of 2002, Smith received a two-year gift subscription to *Popular Science* magazine.  (Doc. # 3, p. 2.)  When his September 2003 issue of the magazine did not arrive as expected, Smith completed an inmate request slip inquiring about his subscription. (Doc. # 3, Ex. # 3.)  In response to Smith's request, Blakely replied that "all mail need[s] bed and dorm number [or] it will be returned.  That might be your problem with your magazine." (*Id.*)

In the August 28, 2003, prison newsletter, prison officials notified the inmates of a new policy governing the receipt of inmate mail.  (Doc. # 3, Ex. # 1.)  The newsletter stated:

> . . . <u>All</u> publications ordered by inmates must be paid for through the inmate's PMOD account with approval by the assistant warden and must be received directly from the publisher.
>
> All publications sent to the inmate as a gift must be received directly from the publisher with approval by the captain or above.
>
> Any inmate who is receiving publications which have not been authorized should cancel such subscriptions.
>
> All inmates receiving authorized publications should verify their correct address including proper names, AIS #, bed #, P.O. box

2

> number, city, state, and zip code and should advise the publisher
> of any discrepancy. <u>No mail</u> will be accepted at this institution
> which does not reflect a complete and accurate name and
> address and a return address. . . .

(*Id.*)   Shortly after receiving the newsletter, Smith submitted an inmate request slip, complaining that the new policy was "arbitrary and capricious" and requesting that Mosley order the mail clerk to provide him with the September issue of his magazine. (Doc. # 3, Ex. # 2.) Mosley did not respond to his request.

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the

3

party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## III. DISCUSSION

### A. The First Amendment

Smith asserts that the defendants violated his constitutional rights by requiring that a prison official authorize the receipt of his subscription magazine. Specifically, he contends that the authorization requirement should not apply to him because he began receiving his gift subscription to *Popular Science* one year before the policy was enacted. In addition, he asseverates that the defendants engaged in unreasonable censorship by requiring that a bed and dormitory number be included on the address labels of periodicals.

The standards enunciated in *Turner v. Safley*, 482 U.S. 78 (1987), should be applied to regulations governing the receipt of incoming mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. This relaxed standard of scrutiny is necessary if "'prison administrators ..., and

not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Id.*,

(quoting *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 128 (1977)).

In *Turner*, the Court established four factors for determining whether prison officials

have acted reasonably in enforcing rules that impact on a protected First Amendment right:

> (1) A valid, rational connection between the regulation and the
> legitimate, justifying governmental interest;
>
> (2) Whether prison inmates retain alternative means of
> exercising the right affected by the regulation;
>
> (3) How accommodation of the right would affect guards,
> inmates, and the allocation of prison resources; and
>
> (4) Whether ready alternatives were not available.

482 U.S. at 89-90.

### 1.    *The Preauthorization of Magazine Subscriptions*

The defendants maintain that pre-approval of subscription magazines is necessary to

promote internal security at Easterling.   The defendants contend that the practice of

approving the receipt of magazines from publishers enables them to regulate the kind and

amount of mail provided to prisoners by reducing the risk that contraband will enter the

prison.  (Doc. # 19 at p. 6.)  In addition, they assert that the pre-authorization of magazine

subscriptions assists prison staff in screening the content of certain publications and ensures

that subscriptions are not used to support gambling debts or extortion schemes in the prison.

(*Id.*)  The defendants also assert that regulating the amount of mail reduces fire hazards and increases the efficiency of cell searches.  (*Id.*)

The defendants' assertion that the preauthorization of subscription magazines reduces the risk that contraband will enter the prison and ensures that subscriptions are not used as payment for gambling debts or extortion schemes is a legitimate reason for requiring the preapproval of incoming publications by a prison official.  *See Avery v. Powell*, 806 F.Supp. 7 (D. N.H. 1992) (finding a rational connection between a regulation requiring magazines and other publications be sent directly from the publisher or by direct subscription and the legitimate government interest in maintaining prison security).  *Cf. Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005) (finding policy prohibiting inmates from receiving magazines depicting gang symbols or signs was reasonably related to the prison's goal of maintaining security);  *Dixon v. Kirby*, 210 F.Supp.2d 792 (S.D. W.Va. 2002) (finding that regulation prohibiting inmates from receiving catalogs was not a violation of a prisoner's constitutional rights).  In addition, the regulation permits Smith to contact the publisher in order to continue receiving his magazine subscription. Moreover, Smith does not suggest and there does not appear to exist other alternatives by which the prison officials are able to vindicate their interests.  Thus, the court finds that the defendants acted reasonably in requiring Smith to obtain authorization before continuing his subscription to *Popular Science*.  Based on the foregoing, the court concludes that the motion for summary judgment with respect to this

claim should be granted in favor of the defendants.

2.     *The Address Labels*

The defendants assert that requiring a bed and dorm number on address labels assures that magazines and letters are directed solely to inmates presently incarcerated at Easterling and that the mail is not erroneously delivered to other inmates, and reduces the time and number of personnel required to inspect, sort, and deliver the mail.  (Doc. # 19 at p.6.)  Thus, there is a rational relationship between the bed and dorm number requirements and the defendants' interest in prison security.  Although Smith argues that requiring both bed and dormitory numbers is "pure insanity" due to the frequent relocation of inmates throughout the prison,[1] he has not shown that this simple requirement has caused delay, prevented him from receiving his mail on an ongoing basis, or otherwise deprived him of his constitutional rights.  Deference must be given to the judgment of prison officials in light of the "inordinately difficult undertaking" of modern prison administration.  *Turner*, 482 U.S. at 85; *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993).  The court therefore concludes that requiring inmates to notify magazine publishers of their bed and dorm numbers when purchasing a subscription strikes a reasonable balance between the prison officials' need to

---

[1](Doc. # 31 at p.8.)

maintain order and security and Smith's constitutional rights.[2]  Consequently, the motion for

summary judgment with respect to this claim should be granted in favor of the defendants.

### B.  The Loss of the September Issue of *Popular Science* Magazine

To the extent Smith asserts that the defendants intentionally took his magazine and

requests that the defendants return his mail or reimburse him for the cost of the September

2003 issue of *Popular Science*, he is entitled to no relief.  The "'unauthorized intentional

deprivation of property by a state employee does not constitute a violation of the Due

Process Clause . . . if a meaningful postdeprivation remedy for the loss is available.'"

*[Hudson v. Palmer]* 104 S.Ct. at 3202, 82 L.Ed.2d at 407."  *Rodriguez-Mora v. Baker*, 792

F.2d 1524, 1527 (11th Cir. 1986).  The State of Alabama, through its Board of Adjustment,

provides a meaningful post-deprivation remedy for Smith to seek redress from the defendants

for the alleged loss of his property.  *Ala. Code* § 41-9-60 *et seq.* (1982).  Consequently, the

motion for summary judgment with respect to Smith's challenge to the intentional taking of

his property should be granted in favor of the defendants.

To the extent Smith asserts that the defendants violated his right to due process by

failing to notify him that his September issue of *Popular Science* was withheld, the

defendants' motion for summary judgment should be granted.  A prisoner's right to send and

---

[2] Smith admits that letters from private individuals are forwarded to inmates without a bed and dorm number.  (Doc. #31 at p.8.)

receive mail is protected under the Due Process Clause of the Fourteenth Amendment. *Osterback v. Crosby*, [No. 4:01cv76-WS, June 9, 2003] 2003 WL 21976145, *21 (N.D. Fla. 2003). Thus, the withholding of incoming inmate mail must be accompanied by minimum procedural safeguards, including providing notice to the inmate that the mail has been rejected, affording the inmate a reasonable opportunity to protest the decision, and the opportunity to forward complaints regarding the rejection to prison officials. *Id.* (citing *Procunier v. Martinez*, 416 U.S. 396, 417-18 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)).

It is clear that procedural safeguards were in effect during the time Smith's September 2003 issue of *Popular Science* did not arrive as expected. Specifically, Administrative Regulation Number 303 provides that a prison official must provide written notice of the temporary ban of mail. (Defs' Ex. #1, Ex. A, pp. 7-10.) In addition, the regulation provides that an inmate may protest the ban by submitting notice of an appeal to the warden. (*Id.*) Although Smith asserts that he did not receive notice and was not provided an opportunity to appeal, there is no evidence that the defendants' failure to provide notice was anything other than a random mistake. *See Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) (determining that the plaintiff's due process rights were not violated because the lack of notice of the withholding of mail was a "rare and inadvertent action"). The court notes that, although Blakely suggested that Smith's failure to put a bed and dorm number on an address

9

label "*might be* [the] problem with your magazine," the evidentiary materials do not indicate the specific reason Smith did not receive his magazine. Moreover, Smith does not dispute that he continued to receive subsequent issues of *Popular Science* after September 2003. Smith has failed to point to anything demonstrating that the defendants have a policy or practice of routinely withholding mail without providing notice to inmates. Consequently, the motion for summary judgment with respect to this due process claim should be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motion for summary judgment be GRANTED.

2.      This case be dismissed with prejudice.

3.      The costs of this proceeding be taxed against the plaintiff.

Additionally, it is ORDERED that:

The parties shall file any objections to this Recommendation on or before February 27, 2006. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted

or adopted by the District Court except upon grounds of plain error or manifest injustice.

*Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*,

667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.

1981) (*en banc*).

      Done this 15th day of February, 2006.


                          _____/s/Charles S. Coody_____

                          CHARLES S. COODY

                          CHIEF UNITED STATES MAGISTRATE JUDGE